## GENERAL COURT, MAY TERM, 1801.

### Gray et al. vs. Swan et al.

The shipper, when he effects insurance, and holds the policy, in case of loss must first have recourse to the underwriters before he can claim from the owner  The sentence of an admiralty court is conclusive on the question of neutrality, if it plainly appear, or can be inferred from the sentence that such question was decided, but if it does not so appear it is not conclusive.

Assumpsit for goods sold and delivered. The facts were these: The defendants, who were wholesale merchants residing in the city of Baltimore, some time in the spring of the year 1794, by their agent Mr. *Carruthers,* of London, delivered to the plaintiffs, who were merchants residing in London in Great Britain, the following orders, viz. "Schedule of linens, &c. to be shipped by Messrs. *Gray & 'Freeman,* of London, on account and risk of *John* and *Joseph Swan,* of Baltimore, and fully insured and marked HS. No. 50," &c. [*Here follows the specification of the quantity and quality of the goods.*] "The above to be shipped in the brig Two Brothers, or first American vessel for Baltimore." In compliance with these orders the plaintiffs on or about the 3d of June 1794, shipped the goods mentioned in the above schedule, on board the brig *The Brothers,* to the address and for account and risk of the defendants; and in a few days thereafter effected a policy of insurance on the said goods to their full value, and in the policy warranted the brig to be American property. The brig was afterwards, in the due prosecution of her voyage from London to Baltimore, captured by a French privateer, called *Le Ca Ira,* and carried into Saint Bartholomews, where she and her cargo were libelled by

the captors in the court appointed by the French republic, for the trial of prizes, and by that court adjudged a *good prize*, and directed to be sold for the benefit of the captors, which said adjudication is as follows, to wit: "Extracts from the minutes of the register's office, of the commission appointed for the trial of the prizes made by the privateer *Le Ca Ira:* In the name of the French people, to all those who these presents may see, greeting. Examined by us *Pierre Bourdichon, Claude Reymond Penicaud, Jean H. Gassies,* and *Bernard Golh,* judges appointed by the citizen *Hugues,* commissary, delegated by the national convention for the windward Islands, to judge definitively the prizes made by the privateer *Le Ca Ira,* captain *Paris,* and particularly the brigantine *"The Brothers,"* prize to the said privateer. The papers found on board the said vessel, *The Brothers,* translated, &c. are as follows:

1st. A passport for the said vessel, dated at Georgetown Maryland, the 6th October, 1789. A recommendation given captain *John B. Smith* by the plenipotentiary of the United States of America at the court of Great Britain, in order that he be not molested, and that all assistance and protection be granted him—the said recommendation dated at London the 2d of June *1794, and to be in force for* the time of six months.

Signed,            *Thomas Pinckney.*

2d. A passport granted the said vessel *The Brothers* by *Thomas Pinckney,* minister plenipotentiary, and *Joshua Johnson* consul of the United States of America, dated the 16th April 1793, for her voyage from Amsterdam to St. Eustatia.

3d. An invoice dated 24th May 1794, beginning by these words—"Account of merchandises received on board *The Brothers,* capt. *John B. Smith,* (B.) from Baltimore"—without signature.

4th. Another invoice of the merchandises, that the said Capt. says belongs to him, beginning as follows— "London, 17 June 1794. Captain *J. B. Smith* bought of *Sterling, Hunters & Co.*" &c. &c.

May 1801

Gray
vs.
Swan

5th. A certificate of the customs of London, by which Cap. *John B. Smith, & Christopher Whipple*, his mate, bind themselves not to land any of the merchandises in any of the ports of England—dated 20th June 1794.

6th. Ten bills of lading, by which it appears that merchandises were shipped at London for America.

7th. A bill of exchange drawn from Maryland on the 28th August 1793, on London, in favour of *Jno. B. Smith*, (captain,) and protested at London 13th October 1793.

8th. A letter conceived in these words: Sir, you will be pleased to be with us to-morrow at 10 o'clock, in order to have *The Brothers* dispatched. We could have wished to have seen you to-day, as we have positive orders from the person who has purchased *the brigantine*. We are somewhat surprized at your having employed other brokers.

(Signed)          *Caldcleugh & Boyd.*
January 22d, 1794.

9th. A muster roll of the said vessel, without date or signature, by which it appears that the said vessel sailed from London for Baltimore, and from thence to go to any part of America, to take her cargo for Europe. The interrogation of *John Harman*, sailor, on board the vessel taken this day, all the other documents produced, having heard the report of citizen *Bourdichon* one of the judges. The conclusions of the national commissary in this party and all considered. We say, that according to the laws of the state, and especially the ordinance 1681, for the navy, article 5, concerning prizes, it is evident, that all ships, wherein the enemies of the state are concerned, are lawful prizes, since that, according to the said article, it would authorise the capture of any ship whatever, when she was loaded with effects belonging to the enemy; the capture is then more *valid when the subject of a state at war is co-proprietor of the vessel captured, which is proved to be the case* in the prize, *The Brothers*; the papers produced proving that she has a co-proprietor in London, which leaves no doubt of the validity of the

prize. Considering moreover, that the captain's papers are not in order, *the muster roll he has produced being both without date or signature, (which is a manifest trespass of the law,) every thing concurs to declare lawful* the aforesaid prize in behalf of the concerned in the privateer *Le Ca Ira,* who is the captor thereof. Therefore we declare the aforesaid brigantine *The Brothers,* together with her cargo and appurtenances, to be the right and lawful prize of the aforesaid privateer *Le Ca Ira,* who is the captor thereof. We order that the whole be sold," &c. &c. "Done at Port Liberty, in the Hall of the Palace of Justice, by us the aforesaid judges, the 23d vendemaire, in the *afternoon,* third year of the French Republic, one and indivisible. Signed," &c. &c.

As soon as the plaintiffs were informed of the capture and condemnation of the vessel and cargo, they, on behalf of the defendants, made a demand on the underwriters for payment for the loss. The underwriters refused to pay; and the plaintiffs having waited till the expiration of the time limited for the payment of the goods, demanded payment from the defendants, who also refused; and this suit was brought to recover the amount as charged in the invoice, to wit, 1393*l* 2*s* 6*d* sterling. The shipment of the goods and effecting full insurance, agreeably to orders, were admitted by the defendants.

*Martin,* (Attorney General,) and *Harper,* for the defendants, contended, and it was so proved by several respectable merchants examined on the occasion, that by the usage of trade the shipper, when he effects insurance and holds the policy, is bound, in case of loss, in the first instance to have recourse to the underwriters, and cannot claim from the merchant here till he has taken all legal measures to recover from the underwriters, and has failed; that in this case the plaintiffs were the holders of the policy, and it does not appear from any thing before the court, that they have taken any legal measures to enforce the payment of the policy, and therefore could not at

this time maintain their action for the value of the goods against the defendants.

*Key* and *Brice*, for the plaintiffs, contended, that admitting the usage of trade, as stated by the counsel for the defendants, to be correct in its general application, and to such cases in which legal measures against the underwriters would be productive of the desired object, to wit, the obtention of the money on the policy, yet it could never apply to cases where the underwriters are absolutely discharged from their contract, and from whom no payment could be legally enforced. In cases like the latter, the shipper of the goods is not obliged to waste time and money in the prosecution of suits in which he cannot succeed, but is entitled to claim from the purchaser immediately; that in the case before the court, the plaintiffs could not, by any legal measures, compel payment from the underwriters; for in the policy on the merchandize in question, the brig was warranted American. She is so stated to be in the orders for effecting insurance delivered by the defendants' agent to the plaintiffs. But the sentence of the court, in which the vessel and cargo were condemned, (and which sentence is conclusive on the question therein decided,) proves that the brig was not American. That it was true the court have not decided in express terms that the vessel was "enemy's property," and that she was condemned on that express ground. But that was a conclusion necessarily flowing from the facts stated, and the reasoning of the court on those facts previous to their decree. That if the decree of the French court was conclusive that the vessel was not American, as warranted, the policy was void, and the underwriters were discharged from all responsibility; and the plaintiffs of course entitled to recover in the present suit.

*Martin,* (Attorney General,) and *Harper,* in reply, admitted that a condemnation by an admiralty court, that the vessel captured "*was enemy's property,*" however false in fact, was nevertheless conclusive

evidence against all the world of that fact. But that in this case the decree did not state, as the ground of decision, that the vessel was enemy's property, nor was it necessarily to be inferred from any thing in the decree that such was the ground of the condemnation. The court only stated the evidence produced, but drew no conclusion from it. That the evidence was not such as to authorise this court to determine on what grounds the admiralty court adjudged the vessel a good prize.

MAY 1801

Gray
vs.
Swan,

THE COURT adopted the arguments of the counsel of the defendants, and thought the sentence of the admiralty court read in this cause, was too ambiguous and obscure to enable them to ascertain, with sufficient precision, on what ground the decree was founded; enough did not appear, to satisfy them that the sentence proceeded on the ground of the brig's being enemy's property, of course there was no breach of warranty; and the court were of opinion, from what appeared in the trial, that the underwriters were answerable, and that the plaintiffs, as holders of the policy, by the usage of trade, must have recourse to them in the first instance.

After this opinion was given, the plaintiff's counsel thought it best to suffer a nonsuit.

Cases cited in the argument. *Park. on Insur.* 358, 360, and the cases there cited. *Calvert and Bovill,* 7 *T. R.* 523. *Geyer vs. Aguilar,* 7 *T. R.* 681.